# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
No. 20-0959V
UNPUBLISHED

| | |
|---|---|
| MARLA MILLER,<br><br>                Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>                Respondent. | Chief Special Master Corcoran<br><br>Filed: June 1, 2023<br><br>Special Processing Unit (SPU); Decision Awarding Damages; Pain and Suffering; Influenza (Flu) Vaccine; Shoulder Injury Related to Vaccine Injury (SIRVA) |

*Anne Carrion Toale*, Maglio Christopher & Toale, PA, Sarasota, FL, for Petitioner.

*Mark Kim Hellie*, U.S. Department of Justice, Washington, DC, for Respondent.

## DECISION AWARDING DAMAGES[1]

On August 3, 2020, Marla Miller filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that she suffered from a shoulder injury related to vaccine administration ("SIRVA") as a result of an influenza ("flu") vaccine she received on November 14, 2017. Petition at ¶1, 15. The case was assigned to the Special Processing Unit of the Office of Special Masters.

For the reasons discussed below, and after hearing argument from the parties, I find that Petitioner is entitled to compensation in the amount of **$82,191.80**, representing

---

[1] Because this Decision contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

$80,000.00 for actual pain and suffering, plus $2,191.80 for past unreimbursed out-of-pocket expenses.

## I. Relevant Procedural History

Approximately 14 months after this case was initiated, Respondent indicated that he wished to engage in settlement discussions. ECF No. 21. After two months of negotiations, however, the parties reached an impasse and Petitioner filed a Motion for a Fact Ruling. ECF No. 26, 30. A ruling on entitlement was issued on April 29, 2022, finding that Petitioner was entitled to compensation for her SIRVA injury. ECF No. 38. After a short period of additional negotiation, the parties were able to resolve only the award for past unreimbursed out-of-pocket expenses to be paid to Petitioner. ECF No. 44.

Petitioner then filed a Motion for Ruling on damages ("Mot."), Respondent filed a responsive memorandum ("Repl."), and Petitioner filed a reply ("Repl."). ECF No. 45-48. I subsequently proposed that the parties be given the opportunity to argue their positions at a motions hearing, at which time I would decide the disputed damages issues. ECF. No. 50. That hearing was held on May 26, 2023,[3] and the case is now ripe for a determination.

## II. Relevant Medical History

A complete recitation of the facts can be found in the Petition, the parties' respective pre-hearing briefs, and in Respondent's Rule 4(c) Report.

Petitioner received a flu vaccine in her left arm on November 14, 2017, in Palm Coast, Florida. Ex. 4 at 4-5. She recalled that she took Tylenol the same day for pain and that she woke that night with excruciating pain (10/10). Ex. 12 at ¶2.

On November 30, 2017 (16 days post-vaccination), Petitioner presented to her primary care physician ("PCP") with complaints of pain in her left arm after her flu vaccine two weeks prior. Ex.2 at 76. On exam, Petitioner had tenderness over the deltoid muscle (injection site) and, although she had normal/full passive range of motion without pain, she was unable to perform active range of motion due to pain. *Id.* Her treater diagnosed myositis and prescribed Voltaren gel. *Id.* She recommended that Petitioner use heat and return in a week if it had not resolved.    *Id.*

---

[3] At the end of the hearing held on May 26, 2023, I issued an oral ruling from the bench on damages in this case. That ruling is set forth fully in the transcript from the hearing, which is yet to be filed with the case's docket. The transcript from the hearing is, however, fully incorporated into this Decision.

Petitioner returned to her PCP on December 19, 2017 for her annual exam and reported no improvement in her left arm pain. Ex. 2 at 74. She was prescribed a Medrol Dosepak and an MRI was ordered. *Id.* at 71. Petitioner stated that the Voltaren gel and Medrol Dosepak reduced her pain to 5-7/10, but that it returned after the course of steroids ended. Ex. 12 at ¶2. Petitioner was unable to immediately get an MRI because her insurance required that she have x-rays first. Ex. 2 at 70. She had x-rays of her left humerus and shoulder on December 29, 2017. Both were normal. *Id.* at 85-86. She had an MRI of her left humerus on January 8, 2018, which was also normal. *Id.* at 88.

On March 28, 2018, Petitioner presented to an orthopedist reporting moderate, aching pain from her flu shot. Ex. 5 at 54-55. On exam, she had reduced range of motion and positive impingement signs. *Id.* at 56. The treater diagnosed impingement syndrome and administered a cortisone injection. *Id.* Petitioner returned to the orthopedist less than two months later, on May 7, 2018, reporting improvement since the previous injection. Ex. 5 at 52-53. That treater administered a second cortisone injection and referred Petitioner to physical therapy. *Id.* at 53-54.

On May 14, 2018, Petitioner presented for an initial physical therapy evaluation. Ex. 1 at 25. Petitioner reported pain after her flu shot that "became excruciating." *Id.* She noted that the oral steroids had helped but did not last and that she had had two cortisone injections. *Id.* She reported that she felt pain of 7/10 while reaching and 2/10 soreness at rest. *Id.* Petitioner attended a total of 24 PT sessions through August 15, 2018. *Id*. at 28-78. By July 27, 2018 (after more than two months of PT), Petitioner reported 65% improvement, but that she still had difficulty reaching for her seatbelt. *Id.* at 39. At her last visit on August 15, 2018 (after three months of PT), Petitioner reported that the only pain remaining was in the back of her shoulder. *Id.* at 29.

Petitioner returned to the orthopedist on September 26, 2018. Ex. 5 at 50. She reported significant improvement from PT, but still had pain with range of motion (although the pain was much better). *Id.* at 51. On exam, Petitioner's range of motion had improved and impingement testing was negative. *Id.* The treater explained that it may take 4-6 more months "if it follows the normal course for frozen shoulder." *Id.*at 52. He did not recommend additional intervention.

Petitioner did not seek further medical treatment for her shoulder pain. Ex. 12 at ¶3. She stated that after six more months, her shoulder was "much better" with only occasional pain. *Id.*

3

### III. The Parties' Arguments

#### a. Petitioner

Ms. Miller seeks an award in the total amount of $92,191.80 consisting of $90,000.00 as compensation for her pain and suffering, plus $2,191.80 for past unreimbursable out-of-pocket expenses (a sum that Respondent does not contest). Mot. at 2, 9. To support her pain and suffering request, Petitioner stressed that her SIRVA injury caused her severe pain and required a significant course of treatment, including two cortisone injections, 24 physical therapy treatments, and over a year to resolve. *Id*. at 10.

During the hearing and in her brief, Petitioner discussed prior SIRVA cases that involved injured claimants with similar fact patterns, and thus argued that an award of $90,000.00 in pain and suffering was reasonable and appropriate given that her circumstances were comparable.

#### b. Respondent

Respondent maintains that a pain and suffering award of only $57,500.00 is appropriate, because Petitioner "sustained a comparatively minor injury and received conservative treatment." Resp. at 4-5. Respondent argued that Ms. Miller's treatment consisted of two steroid injections and physical therapy, but no narcotic medications or surgery. *Id*. at 5.

Respondent distinguished Petitioner's cited prior SIRVA case and presented other SIRVA cases as support for his proposed award. Resp. at 5-6.

### IV. Legal Standard

Compensation awarded pursuant to the Vaccine Act shall include "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000." Section 15(a)(4).

Additionally, a petitioner may recover "actual unreimbursable expenses incurred before the date of judgment awarding such expenses which (i) resulted from the vaccine-related injury for which the petitioner seeks compensation, (ii) were incurred by or on behalf of the person who suffered such injury, and (iii) were for diagnosis, medical or other remedial care, rehabilitation . . . determined to be reasonably necessary." Section 15(a)(1)(B). The petitioner bears the burden of proof with respect to each element of

compensation requested. *Brewer v. Sec'y of Health & Hum. Servs.*, No. 93-0092V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996).

There is no mathematic formula for assigning a monetary value to a person's pain and suffering and emotional distress. *I.D. v. Sec'y of Health & Hum. Servs.*, No. 04-1593V, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) ("[a]wards for emotional distress are inherently subjective and cannot be determined by using a mathematical formula"); *Stansfield v. Sec'y of Health & Hum. Servs.*, No. 93-0172V, 1996 WL 300594, at *3 (Fed. Cl. Spec. Mstr. May 22, 1996) ("the assessment of pain and suffering is inherently a subjective evaluation"). Factors to be considered when determining an award for pain and suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering. *I.D.*, 2013 WL 2448125, at *9 (citing *McAllister v. Sec'y of Health & Hum. Servs.,* No 91-1037V, 1993 WL 777030, at *3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995)).

I may also consider prior pain and suffering awards to aid my resolution of the appropriate amount of compensation for pain and suffering in this case. *See, e.g.*, *Doe 34 v. Sec'y of Health & Hum. Servs.*, 87 Fed. Cl. 758, 768 (2009) (finding that "there is nothing improper in the chief special master's decision to refer to damages for pain and suffering awarded in other cases as an aid in determining the proper amount of damages in this case."). And, of course, I may rely on my own experience (along with that of my predecessor Chief Special Masters) adjudicating similar claims.[4] *Hodges v. Sec'y of Health & Hum. Servs.*, 9 F.3d 958, 961 (Fed. Cir. 1993) (noting that Congress contemplated that the special masters would use their accumulated expertise in the field of vaccine injuries to judge the merits of individual claims).

Although pain and suffering in the past was often determined based on a continuum, as Respondent argues, that practice was cast into doubt by the Court several years ago. *See Graves v. Sec'y of Health & Hum. Servs.,* 109 Fed. Cl. 579 (Fed. Cl. 2013). The *Graves* decision maintained that to do so resulted in "the forcing of all suffering awards into a global comparative scale in which the individual petitioner's suffering is compared to the most extreme cases and reduced accordingly." *Id*. at 589-90. Instead, *Graves* assessed pain and suffering by looking to the record evidence, prior pain and suffering awards within the Vaccine Program, and a survey of similar injury claims outside of the Vaccine Program. *Id*. at 593-95. Under this alternative approach, the statutory cap merely cuts off *higher* pain and suffering awards – it does not shrink the magnitude of *all*

---

[4] From July 2014 until September 2015, the SPU was overseen by former Chief Special Master Vowell. For the next four years, until September 30, 2019, all SPU cases, including the majority of SIRVA claims, were assigned to former Chief Special Master Dorsey, now Special Master Dorsey. In early October 2019, the majority of SPU cases were reassigned to me as the current Chief Special Master.

possible awards as falling within a spectrum that ends at the cap. While *Graves* does not control the outcome of this case, it provides logical guidance that bears on how pain and suffering is calculated.

### V.     Prior SIRVA Compensation Within SPU[5]

#### A.     Data Regarding Compensation in SPU SIRVA Cases

SIRVA cases have an extensive history of informal resolution within the SPU. As of January 1, 2022, 2,371 SPU SIRVA cases have been resolved since the inception of SPU on July 1, 2014. Compensation was awarded in 2,306 of these cases, with the remaining 65 cases dismissed.

Of the compensated cases, 1,339 SPU SIRVA cases involved a prior ruling that petitioner was entitled to compensation. In only 88 of these cases was the amount of damages determined by a special master in a reasoned decision. As I have previously stated, the written decisions setting forth such determinations, prepared by neutral judicial officers (the special masters themselves), provide the most reliable precedent setting forth what similarly-situated claimants should also receive.[6]

1,223 of this subset of post-entitlement determination, compensation-awarding cases, were the product of informal settlement - cases via proffer and 28 cases via stipulation. Although all proposed amounts denote an agreement reached by the parties, those presented by stipulation derive more from compromise than any formal agreement or acknowledgment by Respondent that the settlement sum itself is a fair measure of damages. Of course, even though *any* such informally-resolved case must still be approved by a special master, these determinations do not provide the same judicial guidance or insight obtained from a reasoned decision. But given the aggregate number of such cases, these determinations nevertheless "provide *some* evidence of the kinds of awards received overall in comparable cases." *Sakovits,* 2020 WL 3729420, at *4 (emphasis in original).

The remaining 967 compensated SIRVA cases were resolved via stipulated agreement of the parties without a prior ruling on entitlement. These agreements are often

---

[5] All figures included in this decision are derived from a review of the decisions awarding compensation within the SPU. All decisions reviewed are, or will be, available publicly. All figures and calculations cited are approximate.

[6] *See, e.g., Sakovits v. Sec'y of Health & Hum. Servs.*, No. 17-1028V, 2020 WL 3729420, at *4 (Fed. Cl. Spec. Mstr. June 4, 2020) (discussing the difference between cases in which damages are agreed upon by the parties and cases in which damages are determined by a special master).

described as "litigative risk" settlements, and thus represent a reduced percentage of the compensation which otherwise would be awarded. Due to the complexity of these settlement discussions, many which involve multiple competing factors, these awards do not constitute a reliable gauge of the appropriate amount of compensation to be awarded in other SPU SIRVA cases.

The data for all groups described above reflect the expected differences in outcome, summarized as follows:

|  | **Damages Decisions by Special Master** | **Proffered Damages** | **Stipulated Damages** | **Stipulated[7] Agreement** |
|---|---|---|---|---|
| **Total Cases** | *88* | *1,223* | *28* | *967* |
| **Lowest** | $40,757.91 | $25,000.00 | $45,000.00 | $5,000.00 |
| **1st Quartile** | $70,950.73 | $70,000.00 | $90,000.00 | $42,500.00 |
| **Median** | **$95,974.09** | **$90,000.00** | **$122,886.42** | **$60,390.00** |
| **3rd Quartile** | $125,269.46 | $116,662.57 | $161,001.79 | $88,051.88 |
| **Largest** | $265,034.87 | $1,845,047.00 | $1,500,000.00 | $550,000.00 |

### B. Pain and Suffering Awards in Reasoned Decisions

In the 88 SPU SIRVA cases which required a reasoned damages decision, compensation for a petitioner's actual or past pain and suffering varied from $40,000.00 to $210,000.00, with $94,000.00 as the median amount. Only five of these cases involved an award for future pain and suffering, with yearly awards ranging from $250.00 to $1,500.00.[8]

In cases with lower awards for past pain and suffering, many petitioners commonly demonstrated only mild to moderate levels of pain throughout their injury course. This lack of significant pain is often evidenced by a delay in seeking treatment – over six months in one case. In cases with more significant initial pain, petitioners experienced this greater pain for three months or less. All petitioners displayed only mild to moderate limitations in range of motion ("ROM"), and MRI imaging showed evidence of mild to moderate pathologies such as tendinosis, bursitis, or edema. Many petitioners suffered from unrelated conditions to which a portion of their pain and suffering could be attributed. These SIRVAs usually resolved after one to two cortisone injections and two months or

---

[7] Two awards were for an annuity only, the exact amounts which were not determined at the time of judgment.

[8] Additionally, a first-year future pain and suffering award of $10,000.00 was made in one case. *Dhanoa v. Sec'y of Health & Hum. Servs.*, No. 15-1011V, 2018 WL 1221922 (Fed. Cl. Spec. Mstr. Feb. 1, 2018).

less of physical therapy ("PT"). None required surgery. The duration of the injury ranged from six to 30 months, with most petitioners averaging approximately nine months of pain. Although some petitioners asserted residual pain, the prognosis in these cases was positive. Only one petitioner provided evidence of an ongoing SIRVA, and it was expected to resolve within the subsequent year.

Cases with higher awards for past pain and suffering involved petitioners who suffered more significant levels of pain and SIRVAs of longer duration. Most of these petitioners subjectively rated their pain within the upper half of a ten-point pain scale and sought treatment of their SIRVAs more immediately, often within 30 days of vaccination. All experienced moderate to severe limitations in range of motion. MRI imaging showed more significant findings, with the majority showing evidence of partial tearing. Surgery or significant conservative treatment, up to 95 PT sessions over a duration of more than two years and multiple cortisone injections, was required in these cases. In four cases, petitioners provided sufficient evidence of permanent injuries to warrant yearly compensation for future or projected pain and suffering.

## VI. Appropriate Compensation in this SIRVA Case

### a. Awareness of Suffering

Awareness of suffering is not typically a disputed issue in cases involving SIRVA – and it does not appear to be here. Based on the circumstances of this case, I find that Ms. Miller had full awareness of her pain and suffering.

### b. Severity and Duration of Pain and Suffering

With respect to the severity and duration of the injury, Ms. Miller's medical records and affidavit reveal a moderate, non-surgical SIRVA injury. Ms. Miller was treated by her PCP and an orthopedist, was prescribed steroid medication, had two cortisone injections, had x-rays and one MRI, and participated in 24 physical therapy sessions. She described moderate to severe pain (between 7/10 and 10/10) at the beginning of her injury, which reduced over the course of treatment. *See* Ex. 1 at 25; Ex. 12 at ¶2, 5. Ms. Miller treated her injury for approximately ten months with good results, although she described ongoing mild symptoms for an additional six months before full recovery. Ex. 12 at ¶4-5. All of the above suggest that the appropriate award in this case is "below median," especially given the absence of any surgical intervention – and neither side has requested that the pain and suffering component to be awarded should exceed $100,000.00.

Petitioner relied primarily on *Bruegging v. Secretary of Health & Human Services,* No 17-0261V, 2019 WL 2620957 (Fed. Cl. Spec. Mstr. May 13, 2019) in support of her

proposed award. The *Bruegging* petitioner was awarded $90,000 in pain and suffering for a SIRVA injury that caused severe pain for 6-8 months and required two cortisone injections, an MRI and 12 sessions of occupational therapy. *Id*. at *1-2. Although *Bruegging* is a reasonable comparable decision, Ms. Miller's severe pain moderated over the course of her treatment. Further, as *Bruegging* was decided several years ago (and at a time when there was a lesser body of reasoned decisions available for comparison), I give it somewhat less weight than more recent SIRVA decisions.

Respondent cited two cases to support his proposed pain and suffering award of $57,500: *Rayborn v. Secretary of Health & Human Services*, No. 18-0226, 2020 WL 5522948 (Fed. Cl. Spec. Mstr. Aug. 14, 2020)[9] and *Lucchesi v. Secretary v. Health & Human Services*, No. 19-0943, 2021 WL 5119145 (Fed. Cl. Spec. Mstr. Oct. 4, 2021). Resp. at 5-6. I find *Lucchesi* to be a fair comparable, but a bit low in result considering that Ms. Miller's injury required significantly more PT. Further, Respondent bases his argument, at least in part, on the fact that the petitioners in *Rayborn* and *Lucchesi* had abnormal findings on their MRIs, while Ms. Miller's MRI was normal. Resp. at 5-6. However, Ms. Miller had an MRI of her humerus only, and only x-ray imaging of her shoulder, which suggests any comparison of findings is not useful in determining Ms. Miller's pain and suffering.

In addition to the parties' proposed comparable cases, I deem the present action to be factually similar to another recent case: *Russano v. Secretary of Health & Human Servs.*, No. 18-0392V, 2020 WL 3639804 (Fed. Cl. Spec. Mstr. June 4, 2020). In *Russano,* a petitioner sought treatment for her SIRVA 17 days after her vaccination, initially rated her pain at 8/10 to 9/10, had one MRI and one cortisone injection, and did 23 sessions of physical therapy over an eight-month period. *Id*. at 1. Ms. Russano was awarded $80,000 in pain and suffering. *Id*. at *4. Although Ms. Miller had one additional cortisone injection and treated for a bit longer than Ms. Russano, Ms. Russano was a breast cancer survivor, which complicated her recovery from her SIRVA and justified a slightly higher pain and suffering award. *Id*. at 3-4. On balance, *Russano* provides a good comparable to Ms. Miller's experience.

Under such circumstances and considering the arguments presented by both parties at the hearing, a review of the cited cases, and based on the record as a whole, I find that **$80,000.00** in compensation for past pain and suffering is reasonable and appropriate in this case.

---

[9] The *Rayborn* petitioner was awarded $55,000 in pain and suffering after a treatment course consisting of an MRI, one cortisone injection and some occupational therapy after a four-month delay in seeking treatment. *Rayborn*, 2020 WL 5522948 at *2-3. It is clear that Ms. Miller's injury was more severe than that of the *Rayborn* petitioner and there was no delay in seeking treatment, making *Rayborn* clearly distinguishable.

### c. Award for Past Unreimbursed Expenses

Ms. Miller requests $2,191.80 in past unreimbursable expenses. Mot. at 2. Respondent does not dispute this sum (*See* Resp. at 1), and therefore Petitioner is awarded this sum without adjustment.

## CONCLUSION

In light of all of the above, the I award **Petitioner a lump sum payment of $82,191.80,** (representing $80,000.00 for Petitioner's actual pain and suffering and $2,191.80 for unreimbursable out-of-pocket expenses) **in the form of a check payable to Petitioner, <u>Marla Miller</u>.** This amount represents compensation for all damages that would be available under Section 15(a) of the Vaccine Act. *Id*.

The clerk of the court is directed to enter judgment in accordance with this Decision.[10]

**IT IS SO ORDERED.**

s/Brian H. Corcoran<br>
Brian H. Corcoran<br>
Chief Special Master

---

[10] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.